[Cite as *Forman v. Kreps*, 2016-Ohio-1604.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| JEFF J. FORMAN, et al. | ) | |
| | ) | |
| PLAINTIFFS-APPELLANTS/ | ) | |
| CROSS-APPELLEES | ) | CASE NOS. 13 MA 0177 |
| | ) | 14 MA 0031 |
| VS. | ) | |
| | ) | OPINION |
| ROGER R. KREPS | ) | |
| | ) | |
| DEFENDANT-APPELLEE | ) | |
| CROSS-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 11 CV 906

JUDGMENT: Affirmed in part.
Reversed in part; prejudgment interest award vacated.

APPEARANCES:
For Plaintiffs-Appellants/Cross-Appellees    Attorney Marshall Buck
100 Federal Plaza East, Suite 926
Youngstown, Ohio 44503

For Defendant-Appellee/Cross-Appellant    Attorney Brian Winchester
123 West Prospect Avenue, Suite 250
Cleveland, Ohio 44115

JUDGES:

Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: April 14, 2016

DeGENARO, J.

{¶1} Plaintiffs-Appellants, Jeff F. Forman and Irene Forman, appeal the judgment of the Mahoning County Court of Common Pleas against Defendant-Appellee, Roger Kreps, in a personal injury action. On appeal, Forman asserts that the trial court erred by failing to exclude expert testimony and for failing to give a jury instruction on the issue of recklessness. Kreps assigns five cross-assignments of error regarding jury instructions, premises owner immunity, discovery and evidentiary errors and finally challenges the award of prejudgment interest. The assigned error regarding prejudgment interest is meritorious. The damage award in favor of the Formans is affirmed. However, the prejudgment interest award is reversed and vacated.

## Facts and Procedural History

{¶2} Forman, Kreps, and Dr. Charles Yourstowsky were golfing together at Tippecanoe Country Club. After hitting their first shots from the 15th tee, the three men drove two golf carts to their respective second shots. Forman and Yourstowsky were sharing a cart, while Kreps followed behind in his own cart.

{¶3} Forman stopped at his ball and exited his cart to play his second shot. Meanwhile, Kreps looked down at his scorecard but continued to operate his golf cart and hit Forman from behind; Forman went through the double panel plexiglass windshield of Kreps' cart and landed on the floor of the cart with his legs up. Yourstowsky observed blood on Forman's head, but Forman insisted he was fine. Yourstowsky and Kreps played a few more holes but Forman did not. Forman did not seek treatment either at the golf course or after he left.

{¶4} Forman saw a physician several months later as he was experiencing problems with his back. Forman informed Kreps of his injuries, and Kreps gave Forman $5,000.00 for medical expenses. After physical therapy failed, Forman sent his records to the Laser Spine Institute of Tampa, Florida to be evaluated for minimally invasive spinal surgery by Dr. Zoltan Bereczki, who previously performed four surgical procedures on Forman in 2011 and 2012.

{¶5} By agreement of the parties a magistrate presided over a jury trial,

which returned a verdict in favor of Forman. The magistrate's decision recommended that the trial court adopt the jury verdict in favor of the Formans. The jury awarded $91,375.00 in past economic, non-economic, and future damages to the Formans. Both parties filed objections to the magistrate's decision and motions for judgment not withstanding the verdict and alternatively for a new trial. Finally, the Formans filed a motion for prejudgment interest which the magistrate granted, and Kreps filed objections to this decision as well.

{¶6} The trial court adopted the magistrate's decision and entered judgment in accordance with the jury verdict in favor of the Formans, as well as adopting the award of prejudgment interest. A notice of appeal was timely filed by Kreps but this Court remanded the action for final decisions to be rendered on a multitude of objections and motions filed by both parties. The trial court overruled all pending motions and objections on remand. Forman then filed a timely notice of appeal, and we consolidated both appeals.

{¶7} We will address the assignments of error raised by both parties out of order and consolidated as necessary for clarity of analysis. Moreover, all of the assigned errors are subject to an abuse of discretion standard of review. "An abuse of discretion means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *Downie v. Montgomery,* 7th Dist. No. 12 CO 43, 2013-Ohio-5552, ¶ 50.

### Medical Expert Testimony and Damages

{¶8} In the first of two assignments of error, Forman asserts:

> The trial court abused its discretion by permitting an expert to testify regarding the value of medical services since the expert possessed no knowledge of the type of medical care being provided or of medical billing for that type of procedure.

{¶9} A prevailing plaintiff is entitled to recover reasonable medical expenses.

*Jaques v. Manton*, 125 Ohio St.3d 342, 2010-Ohio-1838, 928 N.E.2d 434, ¶ 5. "Proof of the amount paid or the amount of the bill rendered and of the nature of the services performed constitutes prima facie evidence of the necessity and reasonableness of the charges for medical and hospital services." *Wagner v. McDaniels*, 9 Ohio St.3d 184, 459 N.E.2d 561 (1984), syllabus. The defendant may then present evidence that the proffered amount of medical bills is not reasonable. *Jaques v. Manton*, *supra*, at ¶ 5 (citing *Robinson v. Bates,* 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195, at ¶ 9)

**{¶10}** Ohio Rule of Evidence 702 governs expert testimony, which should assist the trier of fact where the testimony is beyond the ken of the ordinary person. Evid. R. 702, 1994 Staff Notes. The expert testimony must be reliable, which must be "established either by testimony or judicial notice." However, the "trier of fact remains free, of course, to make its own assessment of reliability and to accept or reject the testimony accordingly once it has been admitted." *Id.* (internal citations omitted)

**{¶11}** Forman argues that the jury awarded a verdict significantly lower than the $335,780.24 medical expenses incurred due to the testimony of Dr. Glazer, who was Kreps' expert witness. Specifically, Forman contends that Dr. Glazer's testimony should have been excluded because he stopped performing spinal surgeries in 1997, was not certified or trained in the techniques used in the lumbar laminectomy, and was not a specialist in medical coding.

**{¶12}** Dr. Glazer was qualified to testify as an expert on orthopedic surgery. He testified as to his educational background and training as a medical doctor; he practiced general orthopedic medicine from 1979 until 2009, and also covered the emergency room and performed surgeries during that time. He was licensed in Ohio and five other states and was certified by the American Board of Orthopedic Surgery.

**{¶13}** The magistrate and trial judge did not abuse their discretion in determining that Dr. Glazer was qualified to testify as an expert about the reasonable value of the laser surgeries performed on Forman. Dr. Glazer had extensive experience as both a general orthopedic practitioner and spinal surgeon. The costs

of administering such procedures over the course of 18 years of practice would be known to him, but beyond the knowledge of the average person. Forman's trial counsel cross-examined Dr. Glazer about his experience and the procedures performed on Forman. The weight of the testimony, rather than its admissibility is the essence of Forman's argument.

**{¶14}** Forman further contends that because Dr. Glazer was allowed to testify about the medical bills incurred from the Laser Spine Institute, the jury lost its way and returned a verdict "against the manifest weight of the evidence."

**{¶15}** The First District succinctly explained the requirements of setting aside an award as inadequate: "a reviewing court must determine that the verdict is so gross as to shock the sense of justice and fairness, cannot be reconciled with the undisputed evidence in the case, or is the result of an apparent failure by the jury to include all the items of damage making up the plaintiff's claim." *Iames v. Murphy*, 106 Ohio App.3d 627, 631, 666 N.E.2d 1147 (1st Dist.1995). The "assessment of damages is a matter within the sole province of the jury." *Nevins v. Ohio Dept. of Transp.*, 132 Ohio App.3d 6, 20, 724 N.E.2d 433 (10th Dist.1998). Thus, judgments supported by "some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *Dawson v. Sensenbaugher*, 7th Dist. No. 98 CO 56, 2000 WL 310404, *2 (Mar. 23, 2000).

**{¶16}** At trial, evidence was presented that Forman suffered from a degenerative spine condition. Thus, the presence of Forman's previous spinal condition allowed the factfinder to attribute some of the medical bills to the preexisting condition. Dr. Glazer, based on his experience as a practicing physician, routinely performed and billed for spinal surgeries and testified based on his experience what reasonable medical bills would be for such a procedure.

**{¶17}** It was within the province of the jury to determine what weight to give Dr. Glazer's testimony as part of its evaluation of the amount of damages to award. As there was an adequate foundation for allowing Dr. Glazer to testify as an expert

regarding the reasonableness of the amount of Forman's medical bills, it was not an abuse of discretion by the magistrate to allow the testimony. Accordingly, Forman's first assignment of error is meritless.

## Jury Instructions

{¶18} Both parties argue that the magistrate erred when refusing to instruct the jury on certain charges.

{¶19} Forman's second of two assignments of error states:

> The trial court abused its discretion by refusing to instruct the jury on recklessness when the evidence established the defendant exhibited a conscious disregard for the rights and safety of the plaintiff.

{¶20} Kreps' second of five cross-assignments of error asserts:

> The trial court abused its discretion when it failed to instruct the jury as to the affirmative defense of assumption of risk when participating in recreational activity.

{¶21} It is within the sound discretion of a trial court to refuse to admit proposed jury instructions which are either redundant or immaterial to the case. *Bostic v. Connor*, 37 Ohio St.3d 144, 524 N.E.2d 881 (1988). A trial court will not instruct a jury on a charge if there is no evidence to support the issue. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991). "Ordinarily requested instructions should be given if they are correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction." *Id.* (internal citations omitted).

## Recklessness Instruction

{¶22} Forman argues that the trial court should have used the definition of recklessness as "a perverse disregard of a known risk. Recklessness, therefore, necessarily requires something more than mere negligence. The actor must be conscious that his conduct will in all probability result in injury." *O'Toole v. Denihan*,

118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, paragraph three of the syllabus. Conversely, Kreps contends another definition applies, that recklessness is "conduct characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. Massillon*, 134 Ohio St. 3d 380, 2012-Ohio-5711, 983 N.E.2d 266, paragraph four of the syllabus.

**{¶23}** Forman first argues that Kreps consented to recklessness, but this is a misinterpretation of the record. Kreps's counsel argued for a recklessness instruction in the context of a recreational activity. Neither Kreps' counsel nor the magistrate agreed to the recklessness instruction advanced by Forman. Instead, the magistrate informed the parties that a recklessness instruction would be given only if the evidence warranted it.

**{¶24}** Next, Forman contends that Kreps' admission of putting his head down to check a scorecard when operating the cart warranted a recklessness instruction. The evidence does not provide a sufficient basis to warrant a recklessness instruction. While Kreps violated the duty to operate his golf cart using ordinary care, the facts in this case do not amount to recklessness. There was no evidence that Kreps recognized a substantially higher risk of injury and continued to engage in conduct that under the circumstances demonstrated a conscious disregard to that risk. Accordingly, the magistrate did not abuse his discretion when refusing to give a recklessness instruction, and Forman's second assignment of error is meritless.

### Assumption of Risk Instruction

**{¶25}** When a personal injury occurs during the course of a recreational activity, individual participants and spectators "assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either 'reckless' or 'intentional' as defined in Section 500 and 8A of the Restatement of Torts 2d." *Marchetti v. Kalish*, 53 Ohio St.3d 95, 559 N.E.2d 699 (1990), at syllabus. "Any recovery for injuries sustained in such activities must by definition arise from something other than an ordinary risk." *Byer v. Lucas*,

7th Dist. No. 08-NO-351, 2009-Ohio-1022, ¶ 20 (citing *Marchetti*.) "The risk must be one that is so inherent to the sport or activity that it cannot be eliminated." *Kelly v. Roscoe*, 185 Ohio App.3d 780, 2009-Ohio-4279, 925 N.E.2d 1006, ¶ 20 (7th Dist.).

**{¶26}** The Ohio Supreme Court has explained the limited application of implied assumption of risk in recreational activities. "[T]here will be attendant circumstances that raise questions of fact whether an injured party assumed the risk in a particular situation. In that case, the doctrine of implied assumption of risk, not primary assumption of risk, would be applicable." *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 432, 1996-Ohio-320, 659 N.E.2d 1232.

**{¶27}** Kreps argues that since the club's customs are to use a cart, anyone playing a round of golf there is aware of the ordinary risks of using a cart. To support this argument, Kreps relies on Yourstowsky's deposition testimony that a cart was an inherent part of the game of golf.

**{¶28}** But during the course of trial, Yourstowsky testified that his opinion had since changed, because he subsequently learned that the club does not require golfers to use carts. James Grace also testified that the club does not require the use of carts when playing at the course. Finally, Michael Spiech, the club golf professional, testified in his video deposition that riding in a cart was not "a 100 percent policy in stone that you have to ride at Tippecanoe Country Club."

**{¶29}** In *Coblentz v. Peters*, 11th Dist. No. 2004-T-0017, 2005-Ohio-1102, the Eleventh District considered whether the use of a cart was an inherent part of the sport of golf.

> We must stress that a golfer assumes the ordinary risks of the game, i.e., being struck by an errant golf ball or club. *See McNeill* and *Biggin*, *supra*. Thus, based on *Marchetti*, *supra*, where individuals engage in recreational or sports activities, they assume the ordinary risks of the game, and courts apply a recklessness standard in order to determine liability. In the instant matter, the trial court improperly applied a recklessness rather than a negligence standard.

Although many golfers use motorized golf carts, a motorized golf cart, unlike a golf ball or club, is not incidental to the game of golf. As such, because a golf cart is not an actual part of the sport of golf, appellant had no reason to assume that he would be struck and injured by a golf cart since it is not an ordinary risk of the game. The incident at issue does not involve conduct that is a foreseeable, customary part of the sport of golf. Thus, a negligence standard should have been applied.

*Id.* at ¶ 20-21.

**{¶30}** The Eleventh District's analysis that risks which are considered ordinary and foreseeable are those that will be present in any incarnation of the recreational activity is consistent with our conclusion in *Kelly*, *supra*, where we held that the risk "must be one that is so inherent to the sport or activity that it cannot be eliminated." *Kelly* at ¶ 20.

**{¶31}** As the nonuse of a cart does not prevent a person from engaging in golf—while the nonuse of a ball or club would—it cannot be considered an inherent part of the game. As such, the risk of being injured by a golf cart does not become an ordinary and foreseeable risk. The magistrate did not abuse his discretion in refusing to give an assumption of the risk jury instruction. Accordingly Kreps' second cross assignment of error is meritless.

## Prejudgment Interest

**{¶32}** Kreps asserts in his first of five cross-assignments of error:

The trial court abused its discretion when it failed to properly apply R.C. 1343.03(C) and awarded Appellants pre-judgment interest.

**{¶33}** The process for obtaining an award of pre-judgment interest is statutorily described as follows in pertinent part:

If, upon motion of any party to a civil action that is based on

tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed as follows[.]

R.C. 1343.03(C)(1)

{¶34} The lack of good faith is not the same as bad faith; it is the absence of good faith that is determinative. *Terrago-Snyder v. Mauro*, 7th Dist. No. 08 MA 237, 2010-Ohio-5524, ¶ 92.

A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer.

*Kalain v. Smith*, 25 Ohio St.3d 157, 495 N.E.2d 572 (1986), syllabus.

{¶35} Kreps claims that this Court's review of the motion is limited because the hearing was not held on the record, thus there is no evidence demonstrating that the Formans met their burden. The Formans counter that since there is no transcript, this Court should presume the regularity of the proceedings below.

{¶36} Typically, it is the duty of the appellant to provide a transcript to the reviewing court. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400

N.E.2d 384 (1980); App. R. 9(B). When no transcript is filed, the appellate court must "presume the regularity of the proceedings and the validity of the trial court's judgments. Consequently, arguments that could rely only on the record for support would be deemed meritless in the absence of a record." *Marsilio v. Brian Bennett Constr.*, 7th Dist. No. 06 MA 180, 2008-Ohio-5049, ¶ 14. In circumstances where a transcript is unavailable, App.R. 9(C) permits an appellant to submit a narrative transcript of the proceedings, subject to objections from the appellee and approval by the trial court. *Knapp, supra*, at 199-200.

{¶37} At first blush the absence of a transcript in this matter significantly constrains our review. The record demonstrates that the trial court held some type of hearing; apparently after the parties filed their respective briefs, the matter was set and the magistrate entertained counsels' arguments in chambers but no record was made. It was error for the magistrate to grant, and the trial court to adopt, a prejudgment interest award. Forman's motion for prejudgment interest was unsupported by any "affidavits, depositions or evidence" to justify an award for prejudgment interest. *Pruszynski v Reeves*, 117 Ohio St.3d 92, 2008-Ohio-510, 881 N.E.2d 1230 ¶ 13. As Forman failed to attach any evidentiary materials to his motion at the time of original filing and failed to file any supplemental pleadings, the remaining option was to present evidence at a hearing capable of review by this Court.

{¶38} "[T]he issue of prejudgment interest pursuant to R.C. 1343.03(C) is akin to those areas of law calling for factual determinations reviewable under an abuse-of-discretion standard because it calls upon the trial court to make factual determinations regarding the parties' good faith efforts to settle a case." *Pruszynski v Reeves*, 117 Ohio St.3d 92, 2008-Ohio-510, 881 N.E.2d 1230, ¶ 11, citing *Miller v. First Internatl. Fid. & Trust Bldg., Ltd.*, 113 Ohio St.3d 474, 2007-Ohio-2457, 866 N.E.2d 1059, ¶ 7. Although the trial court may rely partly on its own participation during the pretrial and trial proceedings to aid in its ruling on the motion, a motion for prejudgment interest addresses facts and issues different from those submitted at

trial. *Pruszynski* at ¶ 11-12.

{¶39} As Forman did not support his motion for prejudgment interest with any evidentiary materials, nor create a record capable of review by this Court, the prejudgment award must be vacated. Accordingly, Kreps' first cross-assignment of error is meritorious and the award for prejudgment interest is vacated.

**Section 1533.181 Owner Immunity**

{¶40} Kreps asserts in his third of five cross-assignments of error:

> The trial court abused its discretion in finding that Appellee was not an 'owner' under R.C. §1533.181 entitled to immunity from the claims of Appellants.

{¶41} Section 1533.181 defines the duty owed by an owner of a premises to a recreational user. R.C. 1533.18(B) defines a recreational user as "a person to whom permission has been granted, without the payment of a fee or consideration to the owner, lessee, or occupant of premises, other than a fee or consideration paid to the state or any agency of the state, or a lease payment or fee paid to the owner of privately owned lands, to enter upon premises to hunt, fish, trap, camp, hike, or swim, or to operate a snowmobile, all-purpose vehicle, or four-wheel drive motor vehicle, or to engage in other recreational pursuits."

{¶42} In order to determine if the statute applies, courts must first look to the essential character of the property. *Pauley v. Circleville*, 137 Ohio St.3d 212, 2013-Ohio-4541, 998 N.E.2d 1083, ¶ 16 (2013), reconsideration denied, 137 Ohio St.3d 1444, 2013-Ohio-5678, 999 N.E.2d 698, ¶ 16 (2013). The property must be held open to the public for recreational use, free of charge. R.C. 1533.18. The character of the property must embody "the true outdoors" because a majority of the activities listed in R.C. 1533.18(B) are generally conducted in open spaces such as parks or wilderness tracts. *Pauley*, ¶ 17 (internal citations omitted). This character must include the typical elements of recreational areas "such as land, water, trees, grass, and other vegetation." *Miller v. Dayton,* 42 Ohio St.3d 113, 114, 537 N.E.2d 1294

(1989).

**{¶43}** "A person is not a 'recreational user,' as defined in R.C. 1533.18(B), if he pays a fee or consideration to enter upon 'premises' to engage in recreational pursuits." *Moss v. Dept. of Natural Resources*, 62 Ohio St.2d 138, 404 N.E.2d 742 (1980), at syllabus. An entrance or admittance fee disqualifies users from being defined as "recreational users" under the statute. *Huth v. State, Dept. of Natural Resources*, 64 Ohio St.2d 143, 145, 413 N.E.2d 1201 (1980).

**{¶44}** According to Kreps, because the club uses a corporate structure in which members must buy shares, members of the club are shareholders and therefore owners. Thus, he argues that he can personally avail himself of the club's immunity here, which is at odds with the procedural posture of this case as the club was not named as a party. However, the principle of piercing the corporate veil is not used to protect shareholders from liability; rather it is used to impose liability on shareholders.

**{¶45}** Secondly, and more relevant, the golf course at the club charges a fee for its use. Any use of a fee as a precursor to entry or admittance onto land to engage in recreational pursuits destroys the applicability of recreational user immunity. R.C. 1533.181. As Forman paid a fee for entry onto the premises in order to golf, he cannot be deemed a recreational user. Accordingly Kreps' third cross-assignment of error is meritless.

**Pain and Suffering Deposition Testimony**

**{¶46}** Kreps asserts in his fourth of five cross-assignments of error:

> The trial court abused its discretion in denying Appellee's Motion to Exclude all testimony and arguments regarding Appellant's claims for pain and suffering.

**{¶47}** Pain and suffering damages are less quantifiable and more subjective. *Jordan v. Westfield Ins. Co.*, 7th Dist. No. 07 MA 18, 2008-Ohio-1542, ¶ 47. "Since pain and suffering are subjective feelings, the injured person's testimony is the only

direct proof of such damages." *Youssef v. Jones*, 77 Ohio App.3d 500, 505, 602 N.E.2d 1176, (6th Dist.1991). Thus, "[t]he assessment of such damage is, however, a matter solely for the determination of the trier of fact because there is no standard by which such pain and suffering may be measured." *Fantozzi v. Sandusky Cement Prod. Co.*, 64 Ohio St.3d 601, 612, 1992-Ohio-138, 597 N.E.2d 474 (1992).

{¶48} Kreps argues that Forman's refusal to quantify his pain and suffering damages is tantamount to a refusal to provide discovery concerning the evidence used to calculate damages, relying on *Brad Smith Roofing, Inc. v. Holian*, 8th Dist. No. 77270, 2000 WL 1513781, *3 (Oct. 12, 2000). In that case, the Eighth District analyzed whether Smith's refusal to respond to discovery requests relating to damages prejudiced Holian after having continually failed to produce the hourly rate and amount of hours billed. *Id.* at *1. The court found that the defendant "was entitled to discover the facts which appellant would use to calculate his damages," and the plaintiff's failure to supply the figures prejudiced the defendant. *Id.* at *3. However, *Holian* is distinguishable because Smith refused to provide an evidentiary basis for the amount of objectively measurable damages.

{¶49} There is neither statutory nor case law requiring a plaintiff to quantify subjective damages such as pain and suffering. Further, Kreps does not show where in the record Forman refused to state the basis of his pain and suffering damages. Since pain and suffering damages are subjective and can only be proven by direct testimony of the victim, and the determination of the amount of these damages is within the sole province of the jury, Kreps has failed to demonstrate how the lack of a specific dollar amount has prejudiced his defense of this action. Accordingly, Kreps' fourth cross-assignment of error is meritless.

### Discovery

{¶50} In his fifth and final cross-assignment of error, Kreps argues:

The trial court abused its discretion in allowing Appellants to conduct a trial by ambush to the Appellee's prejudice.

{¶51} Kreps argues several points under this general assignment of error and each will be addressed in turn. First, he contends the magistrate erred by allowing Spiech, the club golf professional, and Dr. Bereczki to testify as expert witnesses. He bases this argument on the fact that no expert report was disclosed for either witness. Secondly, he argues the magistrate erred by allowing specific fact witnesses to testify that had not been disclosed prior to the filing of Forman's final witness list.

{¶52} The purpose of the discovery rules is to avoid hampering the parties' trial preparation as well as prevent a surprise at trial for either party. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 86, 482 N.E.2d 1248 (1985). "The existence and effect of prejudice resulting from noncompliance with the disclosure rules is of primary concern, not just the intent or motive involved." *Sulenski v. Gen. Motors Corp.*, 7th Dist. No. 86 C.A. 146, 1988 WL 6520, *4 (Jan. 20, 1988). A sanction as severe as witness exclusion is only appropriate when the noncompliance results in unfair surprise and prejudice. *Trajcevski v. Bell*, 115 Ohio App.3d 289, 294, 685 N.E.2d 289 (9th Dist.1996). A trial court has broad discretion when imposing discovery sanctions. *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 1996-Ohio-159, 662 N.E.2d 1 (1996), syllabus. However, this discretion is not without limits. A "trial court must consider the posture of the case and what efforts, if any, preceded the noncompliance and then balance the severity of the violation against the degree of possible sanctions, selecting that sanction which is most appropriate." *Woodruff v. Barakat*, 10th Dist. No. 02AP-351, 2002-Ohio-5616, ¶ 16 (internal citations omitted).

{¶53} Civ.R. 26(E)(1)(b) states: "A party is under a duty seasonably to supplement his response with respect to any question directly addressed to * * * (b) the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify." This Court previously held that "Civ.R. 26(E)(1)(b) does not require a party to provide detailed information concerning the basis for an expert's opinion. Rather, the purpose of discovery is met where * * * the opposing party is adequately informed as to the subject matter about

which the expert is expected to testify." *Metro. Life Ins. Co. v. Tomchik*, 134 Ohio App.3d 765, 783, 732 N.E.2d 430 (7th Dist.1999).

**{¶54}** Spiech's credentials as a PGA-certified golf professional support his designation as an expert witness and he testified regarding the rules and customs of golf and swing technique. His knowledge of the game is beyond the ken of the average layperson. No expert report by Spiech was ever provided. However, Kreps does not establish how a lack of an expert report prejudiced his case. Spiech was deposed approximately a month prior to trial and the parties knew that his video deposition would be presented at trial as evidence. Kreps' counsel was present for the deposition and was able to cross-examine Spiech at length. It is not apparent in any manner how Kreps was prejudiced by Spiech's testimony. The trial court did not abuse its discretion in refusing to exclude Spiech's testimony.

**{¶55}** Regarding Dr. Bereczki's expert testimony, Kreps argues that he was prejudiced by not receiving the expert report until the day of the deposition.

**{¶56}** In *Kolidakis v. Glenn McClendon Trucking Co.*, 7th Dist. No. 03 MA 64, 2004-Ohio-3638, ¶ 30, we affirmed the trial court's decision to prevent an expert witness from testifying when the witness was disclosed seven days before trial. However, *Kolidakis* is distinguishable from this case. The record demonstrates that both parties identified their respective experts after the discovery cut-off, and both notified the other of their intention to use the video deposition at trial as evidence. Moreover, Dr. Bereczki's video deposition was taken a month before the trial was held, whereas the video deposition of Kreps' expert Dr. Glazer was taken approximately two weeks prior to trial. Kreps fails to assert, and it is not apparent, how the untimeliness of the report affected his case. Kreps' counsel was able to cross-examine Dr. Bereczki while referring to the report, and then subsequently take the video deposition of his own expert, Dr. Glazer, in rebuttal. As Kreps has failed to demonstrate any prejudice, this argument is meritless.

**{¶57}** Kreps' final argument relative to the timing of witness disclosure concerns certain fact witness that had not been identified until the Forman's filed their

final witness list. In *Trajcevski*, *supra*, the issue was whether a typographical error in a witness list prejudiced the opposing party. The witness to be called was John Lich but the witness list stated John Lynch. *Id.* at 294. This Court has used a four-factor test to determine prejudice in the testimony of an undisclosed witness: 1) the complexity of the subject matter, 2) the ability of the allegedly prejudiced party to have interviewed the witness, 3) the allegedly prejudiced party's knowledge of the proposed testimony, and 4) whether that testimony is cumulative. *Bernard v. Bernard*, 7th Dist. No. 00 CO 25, 2002-Ohio-552, *3 (internal citations omitted).

**{¶58}** Kreps argues that it was unfair surprise and prejudice for the court to allow the following witnesses to testify: "Brian Forman, Christian Mike, [sic] George Patia [sic], Butch Palooga [sic] and James Grace." First, neither Kristen Mike nor George Pintea were permitted to testify by the magistrate as their proffered testimony was deemed to be cumulative. As to Brian Forman, Butch Paluga, and James Grace, Kreps fails to make any factual or legal argument to this court demonstrating how his case was prejudiced. As such, we cannot analyze this asserted error. Thus, Kreps' fifth cross-assignment of error is meritless in its entirety.

**{¶59}** In sum, only Kreps's cross-assignment of error regarding prejudgment interest is meritorious. Accordingly, the judgment of the trial court is affirmed in part; the damage award in favor of the Formans is affirmed. However, the prejudgment interest award is reversed and vacated.

Waite, J., concurs.

Robb, J., concurs.