# STATE OF MICHIGAN

# COURT OF APPEALS

KENNETH BERTIN,

        Plaintiff-Appellant,

v

DOUGLAS MANN,

        Defendant-Appellee.

FOR PUBLICATION
December 27, 2016
9:00 a.m.

No. 328885
Oakland Circuit Court
LC No. 2014-139901-NO

Before: GADOLA, P.J., and FORT HOOD and RIORDAN, JJ.

RIORDAN, J.

Plaintiff appeals as of right the trial court's entry of a judgment of no cause of action in favor of defendant following the jury's verdict that defendant did not engage in reckless misconduct while operating a motorized golf cart at the Farmington Hills Golf Club. The only issue in this appeal is whether the trial court correctly ruled before trial that the applicable standard of care for the operation of a golf cart is reckless misconduct and not ordinary negligence. For the reasons stated below, we vacate the jury's verdict, reverse the trial court's order finding that reckless misconduct is the applicable standard in this case, and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

This case arises from an accident involving a golf cart driven by defendant, which occurred while plaintiff and defendant were golfing together on May 22, 2013. Except for the parties' differing accounts of how defendant struck plaintiff, the underlying facts of this case are not in dispute.

According to plaintiff, while the parties were at the 17th hole, defendant hit his golf ball onto the green, and plaintiff's landed to the right of the green. Plaintiff then drove the cart toward his ball and parked it in nearby rough off the green. He exited the cart, while defendant remained in the passenger seat, and grabbed his putter and wedge, intending to use the latter to chip the ball onto the green. However, after laying his putter on the ground, plaintiff struck his ball too hard, it traveled further than plaintiff intended, and it stopped on the other side of the green. Plaintiff then picked up the putter from where he had set it on the ground and began to walk toward his ball. Plaintiff did not believe that he stepped in front of the cart while walking, as he was moving in the opposite direction of the cart. After he had gone about 10 to 15 feet, defendant drove the cart and struck plaintiff in the buttocks. Plaintiff was pushed forward and

-1-

knocked to the ground due to the impact. After impact, plaintiff rolled to the right, and the cart struck him a second time, running over his leg.

Defendant's recollection was similar to plaintiff's except with regard to the cart. Defendant testified that after he took a shot to get his ball on the green, he returned to the cart, intending to drive it to the other side of the green so that it would be ready for them to drive to the tee box for next hole. Defendant thought plaintiff was to the right and slightly behind the cart, not in front of it. Defendant based his conclusion on the direction that he had seen plaintiff walk from the cart, not from actually seeing plaintiff's location. Defendant started the cart and began to turn left toward a cart path. However, "the minute [defendant] hit the accelerator[,] [plaintiff] was in front of [the cart]." Defendant testified that, prior to driving into plaintiff, he had looked to see if there was anyone in front of the cart and he saw no one. Thus, defendant claims the first time that he noticed plaintiff was when the impact occurred. According to defendant, the cart struck plaintiff in the lower legs and knocked him over. He did not recall the cart then rolling over plaintiff's leg.

In April 2014, plaintiff filed a complaint primarily alleging that defendant acted "with active negligence" and "without due care and caution" when he struck plaintiff. In particular, plaintiff alleged, among other things, that defendant breached his duty to safely, dependably, and reliably operate the golf cart in order to ensure plaintiff's safety and, as a result, caused plaintiff to sustain serious injuries and incur significant damages.

In his answer, defendant largely denied plaintiff's allegations and expressly denied plaintiff's allegations of negligence and carelessness. However, defendant also raised two affirmative defenses: the event was an unforeseeable accident, and plaintiff's own negligence or comparative negligence was the sole cause or a contributing cause to the injuries and damages claimed by plaintiff.

Before trial, plaintiff filed a motion in limine through which he requested that the trial court hold that defendant was negligent as a matter of law based on his deposition testimony so that the case would proceed to trial only on the issue of damages. In response, defendant argued that plaintiff's filing of a motion in limine was improper, as it was, in effect, an untimely motion for summary disposition on the issue of negligence that cited a lower—and incorrect—standard of review. As such, he argued that the trial court should deny plaintiff's motion and allow the issue of negligence to proceed to trial because the events that transpired on the golf course were factually disputed, essentially consisting of plaintiff's word against defendant's word. In addition, defendant asserted that, under *Ritchie-Gamester v City of Berkley*, 461 Mich 73; 597 NW2d 517 (1999), "reckless misconduct" was the standard of care applicable in this case because the parties were coparticipants in a recreational activity when the incident occurred. Defendant further argued that plaintiff was not entitled to a dispositive ruling on the issue of negligence since plaintiff misstated the proper standard of care that defendant owed to plaintiff, and plaintiff could not establish that defendant was, in fact, reckless. The trial court denied plaintiff's motion without prejudice, explaining at the motion hearing that it believed that this issue involved factual questions for the jury to decide. It did not explicitly decide the applicable standard of care.

Later, the parties further disputed the standard of care when they filed their proposed jury instructions, prompting defendant to file a motion to settle the instructions.[1] The trial court ultimately agreed with defendant that a reckless misconduct standard applies in this case because "it is involved with the game of golf." Accordingly, the court entered an order granting defendant's motion to settle the jury instructions and accepting defendant's proposed instructions based on the reckless misconduct standard. It later denied plaintiff's motion for reconsideration.

At trial, the parties provided testimony regarding their respective observations and opinions of defendant's conduct in this case, and plaintiff ultimately agreed that defendant was, at most, being "careless and not paying attention" when the collision occurred. The trial court denied each party's motion for a directed verdict at the close of the proofs. Ultimately, the jury concluded that defendant had not acted with reckless misconduct, and the trial court entered a judgment of no cause of action against plaintiff.

Plaintiff appeals as of right from the trial court's judgment, arguing that the trial court applied an incorrect standard of care.

## II. STANDARD OF REVIEW

The standard of care that a defendant owes to a plaintiff is a question of law that we review *de novo*. *Sherry v East Suburban Football League*, 292 Mich App 23, 27; 807 NW2d 859 (2011); *In re Petition of Attorney General for Investigative Subpoenas*, 274 Mich App 696, 698; 736 NW2d 594.

## III. ANALYSIS

This case presents an issue of first impression in Michigan. As discussed further below, the parties were, without dispute, coparticipants in a recreational activity. Under the broad language in *Ritchie-Gamester*, 461 Mich at 75, "coparticipants in recreational activities owe each other a duty not to act recklessly." However, as plaintiff emphasizes, *Ritchie-Gamester* does not establish that *any* coparticipant conduct that causes injury during a recreational activity must meet the reckless misconduct standard. See *id*. at 89 n 9. Likewise, even though numerous golf-related cases in Michigan and other jurisdictions have applied the reckless misconduct standard to a participant who was injured by a golf ball or a club, we have not found a single Michigan case, or a case in any other jurisdiction, where the driver of an injury-causing golf cart during a game of golf was held to any standard other than ordinary negligence.

---

[1] Most relevant to this appeal, defendant contended that a reckless misconduct standard applies in this case under *Ritchie-Gamester* because the parties were engaged in a recreational activity, a game of golf, when the accident occurred, and injuries related to a golf cart are an inherent risk of golf. Plaintiff disagreed that the *Ritchie-Gamester* standard applies in this case because Michigan caselaw recognizes that the standard does not apply in all circumstances involving recreational activities, Michigan and federal caselaw has held that the recreational activities doctrine does not apply to activities involving off-road vehicles ("ORVs") because they are motorized vehicles, and the golf cart in this case constitutes a motorized vehicle.

Therefore, although the language in *Ritchie-Gamester* may superficially support a decision in favor of defendant, a thorough reading of that opinion, along with an examination of relevant caselaw, the rules of the game of golf, and secondary sources, compels us to conclude that golf-cart injuries are not a risk inherent in the game of golf, and that the trial court erred when it ruled that a reckless misconduct standard, instead of an ordinary negligence standard, applies in this case.

## A. *RITCHIE-GAMESTER*

In *Ritchie-Gamester*, 461 Mich at 75, 77, the plaintiff's injuries resulted from an accidental collision with the defendant while the parties were skating during an "open skate" at an ice arena. *Id*. at 75, 77. The Court reviewed caselaw from Michigan and other jurisdictions, see *id*. at 77-83, and crafted the guiding principles for liability between coparticipants in recreational activities in Michigan, see *id*. at 85-86. It explained, "A person who engages in a recreational activity is temporarily adopting a set of rules that define that particular pastime or sport. In many instances, the person is also suspending the rules that normally govern everyday life." *Id*. at 86. The Court concluded that no matter how the elevated standard is described or justified (for example, as having notice of the inherent risks, as "consent[ing] to the inherent risks," or assuming the risks, etc.), "the basic premise is the same: When people engage in a recreational activity, they have voluntarily subjected themselves to *certain risks inherent in that activity*. When *one of those risks* results in injury, the participant has no ground for complaint." *Id*. at 87 (emphasis added). The Court noted that "there are foreseeable, built-in risks of harm" in all recreational activities, including both contact and noncontact sports and team as well as individual activities. *Id*. at 88.

In light of these principles, the Court adopted the following standard of care in recreational activities cases:

> With these realities in mind, we join the majority of jurisdictions and adopt reckless misconduct as the minimum standard of care for coparticipants in recreational activities. We believe that this standard most accurately reflects the actual expectations of participants in recreational activities. As will be discussed in more detail below, we believe that participants in recreational activities do not expect to sue or be sued for mere carelessness. A recklessness standard also encourages vigorous participation in recreational activities, while still providing protection from egregious conduct. Finally, this standard lends itself to common-sense application by both judges and juries. [*Id*. at 89.]

The Court further clarified the scope of the reckless misconduct standard as follows:

> Surely all who participate in recreational activities do so with the hope that they will not be injured by the clumsiness or over-exuberant play of their coparticipants. However, we suspect that reasonable participants recognize that skill levels and play styles vary, and that an occasional injury is a foreseeable and *natural part of being involved in* recreational activities, however the "informal and formal rules" are structured and enforced.

-4-

. . . When a player steps on the field, she must recognize that an injury may occur, but she does not know whether she will be injured, or whether she will inadvertently injure another player. We do not believe that a player expects an injury, even if it results from a rule violation, to give rise to liability. Instead, *we think it more likely that players participate with the expectation that no liability will arise unless a participant's actions exceed the normal bounds of conduct associated with the activity.* [*Id*. at 94 (emphasis added).]

Thus, the Court adopted the recklessness standard specifically based on the usual expectation of participants that liability will only arise with regard to conduct that exceeds the normal bounds of the conduct associated with a given activity. It is also clear that the Court did not articulate a specific test for determining whether an injury arose from an inherent risk of an activity or whether it was tangential to the sport in which the parties were engaged.

Additionally, the Court clarified in a footnote that the broad language of its holding does not indicate that a reckless misconduct standard shall be applied in all cases that seem to involve conduct arising from a recreational activity: "We recognize that we have stated this standard broadly as applying to all 'recreational activities.' However, the precise scope of this rule is best established by allowing it to emerge on a case-by-case basis, so that we might carefully consider the application of the recklessness standard in various factual contexts." *Id*. at 89 n 9.

Here, the parties do not dispute that golfing, in general, constitutes a recreational activity, as demonstrated by the Michigan Supreme Court's reliance on, and quotation of *Hathaway v Tascosa Country Club, Inc*, 846 SW2d 614, 616-617 (Tex App, 1993) (citations omitted), which expressly extended the "reckless or intentional" standard applicable in the context of "competitive contact sports" to the sport of golf where the plaintiff had been hit by an errant shot. *Ritchie-Gamester*, 461 Mich at 88. However, the parties dispute whether the use of a golf cart falls within the scope of activities involved in the game of golf that would be subject to the reckless misconduct standard established under *Ritchie-Gamester*. In particular, plaintiff contends that injuries arising from the use of a golf cart do not fall within the *Ritchie-Gamester* framework for two reasons: (1) the operation of a golf cart constitutes the operation of a motor vehicle, not participation in a recreational activity,[2] and (2) the use of a golf cart, and the risks presented by a golf cart, are not inherent risks of golf. We will address each argument in turn below.

## B. MOTOR VEHICLE

Plaintiff first asserts that the applicable standard in this case is that of ordinary negligence because a golf cart, like the off-road vehicles ("ORVs") at issue in *Van Guilder v Collier*, 248 Mich App 633; 650 NW2d 340 (2001), is a motor vehicle and, therefore, subject to the civil

---

[2] The trial court disagreed with plaintiff's reasoning that driving a golf cart on a golf course is equivalent to driving an ORV, reasoning that some, although not all, ORVs can be driven on roads and fall under the Motor Vehicle Code ("MVC"), MCL 257.1 *et seq*., but golf carts are not permitted on roads and are not subject to the MVC.

liability provisions under the Motor Vehicle Code ("MVC"), MCL 257.1 *et seq.* We reject this line of reasoning.[3]

As plaintiff recognizes, we have held that the MVC may control in recreational cases under certain circumstances. In *Van Guilder*, 248 Mich App at 635-637, we specifically addressed the applicability of *Ritchie-Gamester*, 461 Mich 73, ultimately concluding that the applicable standard of care is negligence in the operation of an ORV.

> The instant case . . . is distinguishable from *Ritchie-Gamester*. In that case, the Court primarily focused its analysis on injuries sustained during the course of recreational activities that typically or foreseeably involve physical contact between coparticipants. To the contrary, a person operating a motorized recreation vehicle does not reasonably expect or anticipate the risk of physical contact, nor is such risk an obvious or necessary danger inherent to its normal operation. The *Ritchie-Gamester* Court did not contemplate injuries that occur as a result of physical contact between two such vehicles. This distinction is dispositive. We decline to adopt defendant's speculative conclusion that our Supreme Court intended that a recklessness standard of care apply with regard to the operation of motorized recreation vehicles simply because they are usually used for recreational purposes. The operation of motor vehicles, including ORVs, is not governed by the "rules of the game," but by the law. [*Van Guilder*, 248 Mich App at 637-637.]

In reaching this conclusion, we also noted that multiple statutes apply to ORVs. *Id.* at 637-638. Our reasoning relied on the definitions of "motor vehicle" and "vehicle" provided by MCL 257.33 and MCL 257.79, respectively, and noted that statutes specifically addressing ORVs had originally been in the MVC, but were repealed and reenacted in large part under the Natural Resources and Environmental Protection Act by 1995 PA 58. *Van Guilder*, 248 Mich App at 637-638, 638 n 4. In reading the relevant statutes as one law under the doctrine of *in pari materia*, we held that "an ORV is a motor vehicle for purposes of the civil liability act[, MCL 257.401]; therefore, liability may be imposed for its negligent operation." *Id.* at 639.

Whether the civil liability act of the MVC similarly applies to carts driven on a golf course also appears to be an issue of first impression in Michigan. The only provision of the

---

[3] While there may be some persuasive support for plaintiff's claim, see 39 Am Jur Trials, Golf Cart Accidents, § 333 ("The driver of a golf cart may be liable for injuries caused to either the passenger or some other patron on the golf course as a result of negligent operation of the vehicle. This liability is similar to the liability imposed on a person who operates any motor vehicle in a negligent manner and causes personal injuries to another.") (footnotes omitted), Michigan law does not compel the conclusion that ordinary negligence always applies to the recreational use of motor vehicles.

civil liability act that has the potential of applying to a cart being operated on a golf course is MCL 257.401(1),[4] which provides, in relevant part:

> This section shall not be construed to limit the right of a person to bring a civil action for damages for injuries to either person or property resulting from a violation of this act by the owner or operator of a motor vehicle or his or her agent or servant. The owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law.

Even if we assume, without deciding, that a golf cart is a motor vehicle for purposes of the MVC, see MCL 257.33 (defining "motor vehicle"), MCL 257.79 (defining "vehicle"), MCL 257.401(1) does not apply to the golf cart or parties at issue in the instant case.

The first sentence provides that "this section" (*i.e.*, MCL 257.401) does not limit the right of a plaintiff to bring a civil action against the owner or operator of a motor vehicle for "a violation of *this act*." MCL 257.401(1) (emphasis added.) However, that sentence does not impact this case, as plaintiff has not identified a violation of the MVC, and defendant was not, at the time of the accident, an "owner or operator." It is undisputed that defendant did not own the golf cart, and the version of MCL 257.36 in effect at the time of the accident provided, " 'Operator' means every person, other than a chauffeur, who is in actual physical control of a motor vehicle *upon a highway*,"[5] and the golf cart was not driven on a highway. MCL 257.36(1) (emphasis added). The subsequent sentences of MCL 257.401(1) provide for the liability of an *owner* of a motor vehicle "whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law." But, again, defendant was not the owner of the cart, and there is no claim that the owner of the cart breached its duty of ordinary care in entrusting the operation of the cart.

Accordingly, we conclude that plaintiff's reliance on the reasoning in *Van Guidler*, 248 Mich App, at 636-639, based on MCL 257.401 and the MVC, is unavailing.

## C. INHERENT RISK

---

[4] Under MCL 257.601, the traffic laws under Chapter VI of the MVC only apply to the operation of vehicles on highways, unless a different location is indicated in a particular section. We conclude that the liability provisions under Chapter VI do not apply in this case, and that MCL 257.601 does not affect the application of the liability provisions of MCL 257.401(1) regarding the negligent operation of a motor vehicle in other circumstances. MCL 257.657a, a section of the MVC, regulates the operation of golf carts on city and village streets, but that statute went into effect on January 13, 2015, *after* the events in this case occurred, and it is irrelevant because it does not address the operation of golf carts on golf courses.

[5] The amendment under 2013 PA 231, effective March 27, 2014, does not change the analysis.

Next, plaintiff argues that the trial court erred in concluding that the reckless misconduct standard applies in this case under *Ritchie-Gamester* because motorized golf carts are not an inherent risk of golf or an inherent component of the game. In considering the specific facts of this case, see *Ritchie-Gamester*, 461 Mich at 89 n 9, we agree that the risks posed by the golf cart were not risks inherent in the game of golf. Accordingly, we conclude that the instant case is distinguishable from the class of recreational activities to which *Ritchie-Gamester* applies and, therefore, the trial court erred in ruling that the reckless misconduct standard applies to plaintiff's claims. Cf. *Van Guilder*, 248 Mich App at 636-637.

The inherent risks of golf have not been comprehensively delineated by the courts of this state. "Inherent risk" is defined similarly by both legal and lay dictionaries. *Black's Law Dictionary* (10th ed), p 1524, defines "inherent risk" as:

> 1. A risk that is necessarily entailed in a given activity and involves dealing with a situation that carries a probability of loss unless action is taken to control or correct it. 2. A fairly common risk that people normally bear whenever they decide to engage in a certain activity.
>
> A risk is inherent in an activity if the ordinary participant would reasonably consent to the risk, and the risk cannot be tailored to satisfy the idiosyncratic needs of any particular participant like the plaintiff. [Quotation marks and citation omitted.]

Similarly, lay dictionaries have defined "inherent" as "involved in the constitution or essential character of something: belonging by nature or habit: INTRINSIC," *Merriam-Webster's Collegiate Dictionary* (11th ed); "1. existing in someone or something as a permanent and inseparable element, quality, or attribute," *Random House Webster's Unabridged Dictionary* (2d ed);[6] and "existing in something as a permanent, essential, or characteristic attribute," *New Oxford American Dictionary* (3d ed).

Consistent with these definitions, courts in other jurisdictions have concluded that " '[a] risk is inherent in a sport if its elimination (1) would chill vigorous participation in the sport[] and (2) would alter the fundamental nature of the activity.' " *Yoneda v Tom*, 110 Hawaii 367, 376; 133 P3d 796 (2006), quoting *Sanchez v Hillerich & Bradsby Co*, 104 Cal App 4th 703, 713; 128 Cal Rptr 2d 529 (2002) (alteration in original). Similarly, this Court has previously noted the following while interpreting the Ski Area Safety Act, MCL 408.321 *et seq*., which precludes ski-area liability for "dangers that inhere in that sport insofar as the dangers are obvious and necessary," MCL 408.342(2):

> the list of "obvious and necessary" risks assumed by a skier under the statute involves those things resulting from natural phenomena, such as snow conditions or the terrain itself; natural obstacles, such as trees and rocks; and types of

---

[6] *Random House Webster's Unabridged Dictionary* (2d ed) also includes the following as synonyms for "inherent": innate, native, inbred, and ingrained.

equipment that are inherent parts of a ski area, such as lift towers and other such structures or snow-making or grooming equipment when properly marked. These are all conditions that are *inherent* to the sport of skiing. *It is safe to say that, generally, if the "dangers" listed in the statute do not exist, there is no skiing.* [*Schmitz v Cannonsburg Skiing Corp*, 170 Mich App 692, 696; 428 NW2d 742 (1988) (emphasis added.]

Courts have utilized similar reasoning regarding inherent risks of golf. Long before the advent of golf carts, golfers were held not liable for errant balls "sliced" unexpectedly into fellow golfers, see, e.g., *Legal Questions Relating to Golfing and Golf Courses*, 31 Scottish Law Review 194, 198 (1915) (citing *Andrew v Stevenson*, Edinburgh Sheriff Court (1906)), and more recent courts have frequently acknowledged that missed shots and errant golf balls frequently fly in unintended directions, see, e.g., *Yoneda*, 110 Hawaii at 374-379 (concluding, after considering cases from different jurisdictions, that errant shots are an inherent risk of golf); *Dilger v Moyles*, 54 Cal App 4th 1452, 1455; 63 Cal Rptr 2d 591 (1997); *Hathaway v Tascosa Country Club, Inc*, 846 SW2d 614, 616-617 (Tex App, 1993) (stating that "because of the great likelihood of these unintended and offline shots, it can indeed be said that the risk of being inadvertently hit by a ball struck by another competitor is built into the game of golf," and recognizing that it is common knowledge that bad shots may occur in the absence of any negligence); 27A Am Jur 2d, Entertainment and Sports Law, § 86, pp 482-483; 53 ALR4th 282; Lang, *A Good Ride Spoiled: Legal Liability and Gold Carts*, 23 Marq Sports L Rev 393, 393 (2013). Likewise, courts have explicitly and implicitly recognized that swinging golf clubs are an inherent risk of golf as well. See, e.g., *Schick v Ferolito*, 167 NJ 7, 18; 767 A2d 962 (2001); *Havens v Kling*, 277 AD2d 1017, 1018; 715 NYS2d 812 (2000); *Nesbitt v Bethesda Country Club, Inc*, 20 Md App 226, 232-233, 232 n 1; 314 A2d 738 (1974).

Unlike these traditional aspects of the game of golf, carts did not become commonplace in golf matches until relatively recently.[7] As explained by the United States Supreme Court in *PGA Tour, Inc v Martin*, 532 US 661, 684-685; 121 S Ct 1879; 149 L Ed 2d 904 (2001), golf carts became a common accessory to the game during the 1950s, as an advancement in the manner in which equipment was transported during the game:

[T]he use of carts is not itself inconsistent with the fundamental character of the game of golf. From early on, the essence of the game has been shotmaking—

---

[7] Golf carts were not produced until the 1940s. *A Good Ride Spoiled*, 23 Marq Sports L Rev at 394. The oldest state or federal case that we could find involving the liability of an allegedly negligent golf-cart driver to his injured passenger is *Gillespie v Chevy Chase Golf Club*, 187 Cal App 2d 52, 55; 9 Cal Rptr 437 (1960), which held that the plaintiff's actions contributing to the overturning of the cart were sufficient to preclude recovery under the plaintiff's theory of liability under the doctrine of res ipsa loquitur. In *PGA Tour, Inc v Martin*, 532 US 661, 683 n 39; 121 S Ct 1879; 149 L Ed 2d 904 (2001), the United States Supreme Court noted that the first recorded rules of golf were published in 1744, more than 200 years before the *Gillespie* opinion was issued.

using clubs to cause a ball to progress from the teeing ground to a hole some distance away with as few strokes as possible. That essential aspect of the game is still reflected in the very first of the Rules of Golf, which declares: "The Game of Golf consists in playing a ball from the *teeing ground* into the hole by a *stroke* or successive strokes in accordance with the rules." Rule 1–1, Rules of Golf, App. 104 (emphasis in original). Over the years, there have been many changes in the players' equipment, in golf course design, in the Rules of Golf, and in the method of transporting clubs from hole to hole. Originally, so few clubs were used that each player could carry them without a bag. Then came golf bags, caddies, carts that were pulled by hand, and eventually motorized carts that carried players as well as clubs. "Golf carts started appearing with increasing regularity on American golf courses in the 1950's. Today they are everywhere. And they are encouraged. For one thing, they often speed up play, and for another, they are great revenue producers." [Citations omitted.]

The *Martin* Court found that the use of golf carts would not "fundamentally alter the nature" of the game of golf in the context of an American with Disabilities Act claim,[8] and noted that the official Rules of Golf are silent as to whether players are required to walk as they travel from hole to hole, such that walking is not a fundamental component of the game:

> There is nothing in the Rules of Golf that either forbids the use of carts or penalizes a player for using a cart. That set of rules, as we have observed, is widely accepted in both the amateur and professional golf world as the rules of the game. The walking rule that is contained in petitioner's hard cards, based on an optional condition buried in an appendix to the Rules of Golf, is not an essential attribute of the game itself. [*Id*. at 685.]

The *Martin* Court reasoned, "To be sure, the waiver of an essential rule of competition for anyone would fundamentally alter the nature of petitioner's tournaments. As we have demonstrated, however, the walking rule is at best peripheral to the nature of petitioner's athletic events, and thus it might be waived in individual cases without working a fundamental alteration." *Martin*, 532 US at 689. Given these facts, the United States Supreme Court held that allowing a handicapped golfer to use a cart during a tournament—the rules of which prohibited the use of golf carts—did not fundamentally alter the nature of the game. *Id*. at 690.

Consistent with the Supreme Court's observations, the current version of the USGA *Rules of Golf*, effective January 1, 2012, still includes no provision that forbids, penalizes, or requires the use of golf carts. United States Golf Association and R&A Rules Limited, *Rules of Golf* < http://www.usga.org/content/dam/usga/pdf/CompleteROGbook.pdf> (accessed December

---

[8] *Martin*, 532 US at 664-665, considered whether the Americans with Disabilities Act of 1990, 42 USC 12101 *et seq*., "protects access to professional golf tournaments by a qualified entrant with a disability; and," most relevant to the instant case, "whether a disabled contestant may be denied the use of a golf cart because it would 'fundamentally alter the nature' of the tournaments, § 12182(b)(2)(A)(ii), to allow him to ride when all other contestants must walk."

5, 2016).[9]  Likewise, the only reference to walking in the rules is an optional provision in an appendix pertaining to local rules and conditions of competition, which states, "If it is desired to require players to walk in a competition, the following condition is recommended[,]" and provides a sample provision concerning unauthorized forms of transportation. *Id*. at 142.

Accordingly, in light of (1) the United States Supreme Court's observations in *Martin*, (2) the fact that golf carts are not referenced as an inherent component of golf in the current USGA Rules of Golf, and (3) the fact that there is no evidence in the instant case that the golf course where the accident occurred *required* the use of golf carts,[10] we conclude that risks related to golf carts are not inherent risks of the game of golf.  Just as walking is not an essential attribute of golf itself, *Martin*, 532 US at 685, using a golf cart is not a fundamental or inherent characteristic of golf.[11]  Rather, golf carts are a convenience, which—when used during a game of golf on a golf course—make traversing a golf course, and transporting equipment, less strenuous, and they have no basis in, or relationship to, the underlying activity or rules of golf, principally swinging a club in the attempt to strike a ball.

Notably, in *Forman v Kreps*, 2016 Ohio 1604; 50 NE3d 1 (Ohio App, 2016), the Seventh District of the Court of Appeals of Ohio came to the same conclusion that we do and utilized similar reasoning when it considered a nearly identical issue (*i.e.*, whether an assumption of risk instruction applied, under Ohio's version of the recreational activities doctrine, to a case

---

[9] The only provisions that reference golf carts in the Rules of Golf are the following: (1) under the etiquette section, a provision stating that players should leave their bags or carts in a position that will allow them to move quickly to the next tee as soon as they are done playing; (2) under the section discussing care of the golf course, a provision stating that players should strictly observe local notices regarding the movement of golf carts; and (3) under the definitions section, a provision stating that the word "equipment" includes a golf cart, regardless of whether it is motorized, and explaining whether a cart will be deemed the equipment of multiple players when it is being shared or moved by more than one player. *Id*. at 20-21, 24-25.

[10] Compare *Forman v Kreps*, 2016 Ohio 1604; 50 NE3d 1 (Ohio App, 2016), at ¶¶ 27-28.

[11] We do, however, agree with defendant, as well as the United States Supreme Court and other courts and observers, that golf carts are now a ubiquitous part of the game.  See, e.g., *Martin*, 532 US at 685; *A Good Ride Spoiled*, 23 Marq Sports L Rev at 394.  However, even though that fact may lead to the conclusion that accidents involving carts are *foreseeable*, a *foreseeable* aspect of the game is not necessarily an *inherent* aspect.  Compare *Black's Law Dictionary* (10th ed) (defining "foreseeability" as "[t]he quality of being reasonably anticipatable"), with the definitions of "inherent" previously discussed.  Cf. MCL 600.2966 (precluding governmental tort liability for "an injury to a firefighter or police officer that arises from the normal, *inherent, and foreseeable* risks of the firefighter's or police officer's profession") (emphasis added); *Ritchie-Gamester*, 461 Mich at 94 (implicitly recognizing a difference between something being foreseeable and being natural); *Forman*, 2016 Ohio at ¶ 29, 30 (implicitly recognizing a difference between something being foreseeable and being customary or ordinary).

involving a plaintiff who was injured when his golfing companion hit him from behind with a golf cart):

{¶ 29} In *Coblentz v. Peters*, 11th Dist. No. 2004–T–0017, 2005-Ohio-1102, 2005 WL 583793, the Eleventh District [of the Court of Appeals of Ohio] considered whether the use of a cart was an inherent part of the sport of golf.

> We must stress that a golfer assumes the ordinary risks of the game, i.e., being struck by an errant golf ball or club. *See McNeill* and *Biggin*, *supra*. Thus, based on *Marchetti*, *supra*, where individuals engage in recreational or sports activities, they assume the ordinary risks of the game, and courts apply a recklessness standard in order to determine liability. In the instant matter, the trial court improperly applied a recklessness rather than a negligence standard.
>
> Although many golfers use motorized golf carts, a motorized golf cart, unlike a golf ball or club, is not incidental to the game of golf. As such, because a golf cart is not an actual part of the sport of golf, appellant had no reason to assume that he would be struck and injured by a golf cart since it is not an ordinary risk of the game. The incident at issue does not involve conduct that is a foreseeable, customary part of the sport of golf. Thus, a negligence standard should have been applied.

*Id*. at ¶ 20–21.

{¶ 30} The Eleventh District's analysis that risks which are considered ordinary and foreseeable are those that will be present in any incarnation of the recreational activity is consistent with our conclusion in *Kelly*, *supra*, where we held that the risk "must be one that is so inherent to the sport or activity that it cannot be eliminated." *Kelly* at ¶ 20.

{¶ 31} As the nonuse of a cart does not prevent a person from engaging in golf—while the nonuse of a ball or club would—it cannot be considered an inherent part of the game. As such, the risk of being injured by a golf cart does not become an ordinary and foreseeable risk. The magistrate did not abuse his discretion in refusing to give an assumption of the risk jury instruction. Accordingly Kreps' second cross assignment of error is meritless.

Therefore, we conclude that risks related to golf carts are not risks inherent in the game of golf, as the sport of golf would exist and remain virtually unchanged in the absence of golf carts. Cf. *Schmitz*, 170 Mich App at 696; *Yoneda*, 110 Hawaii at 376. Accordingly, the trial court erred in ruling that a reckless misconduct standard of care applies in this case. Given the

absence of any common-law or statutory rule imposing a higher standard, the applicable standard is ordinary negligence.[12]  See *Sherry*, 292 Mich App at 29 (reasoning, after it determined that a reckless misconduct standard did not apply under the facts of that case, that an ordinary negligence standard applied).  See also *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 170, 171-172; 809 NW2d 553 (2011) (recognizing the general "common-law duty to exercise reasonable care and avoid harm when one acts"); *Chunko v LeMaitre*, 10 Mich App 490, 494-495; 159 NW2d 876 (1968) (recognizing a common-law duty of ordinary care in operating a motor vehicle).

We cannot assume from the jury's verdict finding that defendant did not commit reckless misconduct, a higher standard than negligence, see *Ritchie-Gamester*, 461 Mich at 85, that the jury also would have concluded that defendant did not act negligently.  Additionally, it is apparent from the parties' testimony at trial that there remains a question of fact, for the jury to determine, as to whether defendant breached his duty of ordinary care.  See *Case v Consumers Power Co*, 463 Mich 1, 6-7; 615 NW2d 17 (2000) (explaining what constitutes ordinary care in negligence cases); *Funk v Tessin*, 275 Mich 312, 326; 266 NW 362 (1936) (approving a similar explanation of due care in the context of a case involving a pedestrian struck from behind by a motor vehicle).  Therefore, we remand this case for further proceedings consistent with this opinion.

## IV.  CONCLUSION

The trial court applied an incorrect standard of care.  Thus, we vacate the jury's verdict, reverse the trial court's order finding that reckless misconduct, as opposed to ordinary

---

[12] We were unable to find any cases holding the driver of an injury-causing golf cart to a standard of reckless misconduct.  Rather, our review of caselaw from other jurisdictions has revealed multiple cases against the drivers of golf carts in which a negligence standard has been applied or assumed.  See, for example, the cases cited in Anno: *Liability for Injury Incurred in Operation of a Power Golf Cart*, 66 ALR 4th 622, 644-648 §§ 3-8, and *A Good Ride Spoiled*, 23 Marq Sports L Rev 393.  See also, e.g., *Goodwin v Woodbridge Country Club, Inc*, 170 Conn 191, 192; 365 A2d 1158 (1976) (considering an appeal from verdict against the defendants for negligent operation of a golf cart).

However, we also note that a New York court stated—in the context of a case concerning the liability of a golf course with regard to a plaintiff who was injured while operating a golf cart that slipped on wet leaves—that golfers are deemed to assume the risks of evident physical features of a golf course and "are 'held to a common appreciation of the fact that there is a risk of injury from improperly used carts[.]' " *Rose v Tee-Bird Golf Club, Inc*, 116 AD3d 1193, 1193; 984 NYS2d 210 (2014), quoting *Brust v Town of Caroga*, 287 AD2d 923, 925; 731 NYS2d 542 (2001).  But it subsequently stated, "Nevertheless, liability may be found where the participant proves a dangerous condition over and above the usual dangers that are inherent in the sport[.]" *Rose*, 116 AD3d at 1193 (quotation marks and citations omitted).

negligence, is the applicable standard under the circumstances of this case, and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.


/s/ Michael J. Riordan
/s/ Michael F. Gadola
/s/ Karen M. Fort Hood